**SIGNED THIS: September 24, 2008**

                                             _____
                                             **MARY P. GORMAN**
                                         **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | In Bankruptcy |
| EARL M. GRAY, III, | ) | |
| | ) | Case No. 06-71246 |
|        Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EARL M. GRAY, III, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
|    v. | ) | Adversary No. 08-7016 |
| | ) | |
| CITY OF DECATUR, | ) | |
| | ) | |
|        Defendant. | ) | |

# O P I N I O N

This case is before the Court for decision after trial of an adversary complaint brought by Earl M. Gray, III ("Debtor") to determine the dischargeability of certain debts owed by the Debtor

-1-

to the City of Decatur ("City").[1] The issue before the Court is whether demolition expenses assessed against the Debtor post-petition by the City relating to seven properties owned by the Debtor were discharged in the Debtor's bankruptcy. The properties were not demolished nor subject to court-ordered demolition at the time the Debtor filed his bankruptcy petition. The Debtor contends, however, that the condition of the properties was such that demolition was inevitable. Therefore, the Debtor argues that the demolition expenses constituted a debt at the time of the filing of the bankruptcy petition. The City contends that its demolition expense claims did not arise until after the filing of the bankruptcy petition because such claims do not arise until the City completes demolition and obtains a final judgment for its costs. The City argues that the debts were not discharged in the Debtor's case because no debt or claim existed when the case was filed. The parties agree that pre-petition claims for demolition expenses by the City would be dischargeable. They dispute whether the City's claims here are pre-petition.

---

[1] Although the Complaint is captioned as a Complaint to Determine Dischargeability and states that it is brought pursuant to Bankruptcy Rule 7001(6), it is not brought to determine whether any of the §523(a) exceptions to discharge apply. 11 U.S.C. §523(a). Rather, Debtor is seeking a determination of whether the City's claims arose pre-petition or post-petition and, accordingly, whether such claims are subject to the discharge order entered in his case. Thus, the complaint is more properly described as one brought to obtain a declaratory judgment and will be treated as such. See Fed.R.Bankr.P. 7001(9).

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on September 18, 2006.  The Chapter 7 Trustee filed a Notice of Partial Abandonment on November 2, 2006, wherein he abandoned all scheduled real estate and the Debtor's interest as a buyer in certain contracts for deed.  A discharge order was entered on January 4, 2007.

Prior to filing, the Debtor had been in the real estate business for 10 to 15 years, and he owned more than 45 properties at the time he filed.  All of the properties were subject to mortgages.  With the filing of his bankruptcy case, the Debtor intended to surrender all of the properties to the lien holders.  However, his secured creditors refused to take back the seven properties at issue in this proceeding.

The Illinois Municipal Code authorizes a municipality to demolish dangerous and unsafe buildings.  65 ILCS §5/11-31-1(a).  The Code requires the municipality to apply to the circuit court for an order authorizing action to be taken with respect to a building if the owner of the building fails to put the building in safe condition after at least 15 days' written notice by mail to do so.  The cost of demolition is recoverable from the owner of the real estate and the final judgment for such costs becomes a lien against the real estate.  Id.

Trial testimony established that the City enforces the Illinois Municipal Code and its own related ordinances and building

codes through an established procedure of inspections and notices. When the City becomes aware of substandard property, an inspection of the property is made. If the inspection reveals that the property is in a dangerous, unsafe, or structurally unsound condition, the City posts it as unfit for human habitation and a letter is then sent to the owner notifying him of the posting and findings of unfitness. The letter details the specific violations of the City codes and notifies the owner of his right to appeal the notice within 10 days. If the problems are not remedied, a second letter - the statutorily mandated notice - is sent informing the owner that, if the structures on the property are not demolished or made safe within 15 days, then the City will abate the violations and require the owner to reimburse the City for its costs. If the owner fails to take appropriate action, the City gets an estimate of the cost to repair the premises to minimum code standards and compares it to the assessed value of the property. If the cost to repair the structure exceeds the assessed value, the City determines that the structure is beyond reasonable repair and files a circuit court complaint seeking authority to demolish. After a judgment is entered, the structure is demolished and the demolition expenses, costs of suit, and reasonable attorneys fees are assessed against the owner in a final judgment.

The following chart illustrates the application of this process to the seven properties at issue in this proceeding:

| Property Address | Unfit Posting | Statutory Notice | Est. Cost to Repair | Date of Estimate | Assessed Value | Complaint Filed | Judgment Entered |
|---|---|---|---|---|---|---|---|
| 2452 E. Main | 7/26/07 | 10/17/07 | $34,599.55 | 12/10/07 | $8,856 | 1/14/08 | |
| 1405 E. Grand | 5/7/07 | 8/22/07 | $37,560.62 | 11/5/07 | $3,233 | 12/5/07 | 2/13/08 |
| 1518 N. Morgan | 5/7/07 | 8/23/07 | $26,891.42 | 10/8/07 | $2,424 | 12/3/07 | 3/12/08 |
| 1136 E. Elmhurst | 9/21/06 | 8/16/07 | $40,402.80 | 10/9/07 | $6,097 | 11/26/07 | 3/12/08 |
| 1046 N. College | 4/12/07 | 6/5/07 | $25,125.48 | 6/21/07 | $3,663 | 8/20/07 | 2/13/08 |
| 711 W. Wood | 11/9/06 | 1/12/07 | $35,153.92 | 1/16/07 | $12,425 | 2/28/07 | 5/30/07 |
| 1322 E. Leafland | 7/17/06 | 8/17/06 | $31,273.64 | 10/17/06 | $5,173 | 12/29/07 | 5/30/07 |

The City's evidence established that only one of the properties - 1322 E. Leafland - had been subject to any involvement by the City before the Debtor's case was filed. Both the notice of unfitness for habitation and the 15-day statutory notice were issued as to this property pre-petition. There was no evidence, however, that any code violations or other problems at any of the other six properties were noticed by or reported to City officials pre-petition.

The parties agree that demolition costs are generally dischargeable because they do not fall within any of the specified exceptions to discharge. 11 U.S.C. §523(a); <u>In re Burnes</u>, 1998 WL 34069409 (Bankr. C.D. Ill.)(reimbursement claim of city for demolition expenses is not a fine or penalty which would be non-dischargeable under 11 U.S.C. §523(a)(7)). However, a discharge only "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. §727(b). The Bankruptcy

-5-

Code defines "debt" as "liability on a claim". 11 U.S.C. §101(12). The term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). The terms "debt" and "claim" are co-extensive; when a creditor has a claim against the debtor, the debtor has a corresponding debt to the creditor. In re Barber, 339 B.R. 587, 594 (Bankr. W.D. Pa. 2006).

The definition of "claim" is broad; Congress contemplated that all legal obligations of a debtor would be dealt with in a bankruptcy case. In re Kasco, 378 B.R. 207, 210 (Bankr. N.D. Ill. 2007). The existence of a valid bankruptcy claim depends on whether (i) the claimant possessed a right to payment, and (ii) that right arose before the filing of the petition. In re Karp, 373 B.R. 837, 841 (Bankr. N.D. Ill. 2007). A claim exists for bankruptcy purposes only if, before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation and a right to payment under relevant non-bankruptcy law. In re Antonino, 241 B.R. 883, 888 (Bankr. N.D. Ill. 1999).

The Debtor maintains that all seven of the properties were beyond reasonable repair at the time of the bankruptcy filing and, accordingly, demolition of each by the City was inevitable.

Therefore, he argues that the demolition costs are dischargeable even though the state court demolition proceedings and actual demolitions took place post-petition.  The Debtor testified generally that the properties were in bad shape when he acquired them.  He testified that the buildings on North College, East Main, and East Leafland were never rented.  He purchased the buildings between 2001 and 2004 with the intention of fixing them up but never had the financing to follow through with his plans.  According to the Debtor, the buildings on East Elmhurst, North Morgan, and East Grand were vacant for at least a year before his case was filed.  The building on West Wood had been vacant for six to nine months prior to filing.  The Debtor did not offer specific evidence as to the exact condition of each property at the time of filing.  Instead, he relied heavily on the fact that the properties were vacant and unrented at the time of the filing, and the fact that the mortgage holders refused to accept surrender of the properties.

   The City contends that the demolition costs are post-petition debts because the City does not have an enforceable right to collect its costs until a final judgment is entered by the circuit court.  The City asserts that it does not have a claim or debt until it has that judgment.

   Several courts have confronted the issue of the dischargeability of municipal demolition expenses associated with

a debtor's property where the demolition has occurred post-petition but the violations existed pre-petition. For example, In re Caslin, 97 B.R. 366 (Bankr. S.D. Ohio 1989), involved two demolished properties. With respect to one of the properties, both service of the "notice of nuisance" and the demolition occurred after the bankruptcy case was closed. The Caslin court found that the debtor's obligation to the city for demolition costs related to this property was unaffected, *i.e.* not discharged, by his bankruptcy. Id. *at* 370. As to the other property, the debtor was served with a "notice of nuisance" pre-petition but the property was demolished post-petition. With respect to this property, the court found that the city had asserted a claim against the debtor prior to the filing of the bankruptcy petition and, accordingly, that claim was discharged and the city was, therefore, barred from collecting the demolition costs personally from the debtor. Id. *at* 369.

In re Sprouse, 2008 WL 1767727 (Bankr. N.D. W. Va.), also involved some pre-petition actions by the municipality. The city in Sprouse issued a condemnation placard and notice of violation approximately four months prior to the filing of the bankruptcy petition. Eight months after the filing of the bankruptcy, the city noted that the property had been on a demolition list for a year. The property was finally demolished three years after the petition was filed. The Sprouse court found that the "acts of the

-8-

debtors that caused the property to be razed occurred before they filed bankruptcy." Id. *at* *3. Further, because demolition was slated to occur before the bankruptcy case was filed, the court concluded that the city had a pre-petition claim that was discharged as a personal obligation of the debtors. Id.

In In re Flood, 234 B.R. 286 (Bankr. W.D. N.Y. 1999), a city inspector noticed that a building was vacant, and an inspection of the property resulted in a recommendation that a structural inspection be conducted to determine if the property was unsafe. These actions took place pre-petition. The structural inspection itself, however, took place post-petition, but before the trustee had filed a no asset report. A notice of demolition hearing was sent to the debtor after the trustee abandoned the property. The Flood court rejected the debtor's argument that the city's claim was discharged because the code violations existed at the time of the filing of the bankruptcy petition. The court held that, until the city had followed the "essential due process procedures" necessary to start the demolition process, it did not have a claim which was subject to being discharged. Id. *at* 292.

The case law is instructive in attempting to determine when the City's claim for demolition expenses came into existence. The cases all require some level of involvement by a municipality before it can be said that a claim exists in favor of the municipality. This Court agrees. The existence of code

violations, however numerous or serious, is not sufficient to establish that demolition is inevitable and that, if a bankruptcy case is filed, a dischargeable debt exists.  Until the municipality has gotten involved, done some degree of inspection, and issued a notice or other process, its claim does not exist and, therefore, cannot be discharged.   With respect to six of the Debtors properties, there was no evidence presented of any City involvement, inspections, or notices pre-petition.  Accordingly, the claims of the City for demolition expenses for the properties at 1136 East Elmhurst, 711 West Wood, 1405 East Grand, 1046 North College, 1518 North Morgan and 2452 East Main in Decatur, Illinois will be declared not to have been discharged by the Order of Discharge entered January 4, 2007.

With respect to the property at 1322 East Leafland, the facts are different.  Prior to the bankruptcy filing, the City inspected the property and both the first notice of unfitness for habitation and the second, statutory notice were served on the Debtor.  This brings the City generally within the parameters set by the Caslin, Sprouse, and Flood for when a municipality's claim for demolition expenses can fairly be said to come into existence.  When the City received notice of the Debtor's case filing here, its representatives knew that, with respect to 1322 East Leafland, the Debtor had no intention of keeping the property and that demolition was inevitable.

-10-

The fact that, at the time of the Debtor's bankruptcy filing, the City had not liquidated its claim against the Debtor is not determinative of the claim's existence.  A right to payment need not be reduced to judgment before it becomes a valid claim in bankruptcy.  Further, under certain circumstances, "a claim may exist for bankruptcy purposes, even if suit could not yet be brought for it under non-bankruptcy law."  In re U.S. Airways, Inc., 365 B.R. 624, 628 (Bankr. E.D. Va. 2007).  A claim is a pre-petition claim if there was a pre-petition relationship between the debtor and the creditor such that the creditor could fairly contemplate the possibility of filing a claim against the debtor's bankruptcy estate at the time the bankruptcy petition was filed.  In re Cleveland, 349 B.R. 522, 531 (Bankr. E.D. Tenn. 2006); AM Intern., Inc. v. Datacard Corp., 146 B.R. 391, 394 (N.D. Ill. 1992).  When the Debtor's case was filed, the City could have fairly contemplated a claim against the Debtor for the demolition expenses that were certain to follow with respect to this property. By that time, the City's rights were sufficiently developed with respect to this property that it can be fairly said that the City had a claim against the Debtor.  Accordingly, the demolition expenses associated with 1322 East Leafland will be declared to have been discharged by the Order of Discharge entered January 4, 2008.

This Opinion is to serve as Findings of Fact and Conclusions

of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###